IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DWAYNE BARTLETTE,

   Plaintiff,

v.

CORIZON, et al.,

   Defendants.

Civil Action No.: PX-21-2671

**MEMORANDUM OPINION**

Plaintiff Dwayne Bartlette filed the above-captioned Complaint on October 21, 2021, in which he requested that the Court issue an order for the Maryland Correctional Training Center ("MCTC") to send him "to an appropriate specialist for a full and complete reconstructive surgery of [his] nose." ECF No. 1 at 6. The Court issued a show-cause order to the Maryland Department of Public Safety and Correctional Services ("DPSCS") as to why Plaintiff's request for injunctive relief should not be granted. ECF No. 3. DPSCS responded on January 18, 2022. ECF Nos. 8, 9. For the following reasons, the request for injunctive relief is DENIED. The matter will proceed in all other respects.

**I.    Plaintiff's Allegations**

Plaintiff alleges that Defendants failed to treat his broken nose, resulting in permanent deformity and severe pain. ECF No. 1 at 3. He maintains that he was unable to go about daily activities and could not sleep comfortably for six months. *Id.* As an asthmatic, the injuries impaired his breathing and were left untreated for three years, despite his requests for medical assistance. *Id.* at 4, 5. Plaintiff avers that the medical staff are acutely aware of his predicament because they have reviewed the x-rays showing his multiple nasal fractures and he has discussed

with them his symptoms many times. *Id.* Plaintiff asks this Court to order that MCTC send him to an appropriate specialist for complete reconstructive surgery. *Id.* at 6.

**II.     DPSCS Response**

DPSCS contends that Plaintiff is not entitled to injunctive relief because he is receiving ongoing medical treatment and evaluation, rendering his request moot. ECF No. 9 at 4. DPSCS attaches certain of Plaintiff's medical records which reflect that Plaintiff has a history of significant trauma to his nose, for which he received treatment.[1] ECF No. 9-1. On January 3, 2019, the on-site physician, Dr. Contah Nimely, requested that Plaintiff be evaluated by an ear, nose, and throat specialist to address Plaintiff's deviated septum and a nasal deformity. *Id.* at 2, 6. Plaintiff reported he did not have "symptom relief on [the] nasal steroid/flonase," *Id.* at 6. Dr. Nimely prescribed Plaintiff Nasacort spray instead. *Id.* at 4, 7. Plaintiff did not express any concerns about his nose during a March 26, 2019 review of his confinement conditions. *Id.* at 8. At his next medical visit on April 9, 2019, Plaintiff again requested an inhaler because he was still having difficulty breathing. *Id.* at 10. Plaintiff was seen again on April 14, 2019, for chest pain. *Id.* at 15.

---

[1] DPSCS requests that Plaintiff's medical records (Exhibit A) be sealed because they include protected health information. ECF No. 8 at 1. Local Rule 105.11 states that, "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2021). The rule balances the public's right to access the courts, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with individual privacy concerns, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265- 66 (4th Cir. 2014) (*quoting Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (*quoting In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir. 1986)). Although the sealing request raises the compelling reason of protecting Plaintiff's protected health information from public dissemination, the Court can provide the same protection by restricting access to these records. Accordingly, the Clerk is directed to restrict access to Exhibit A and any such similar medical records filed in the future to the parties and the Court.

On April 23, 2019, Plaintiff returned to Dr. Nimely. The specialist evaluation had not yet taken place. *Id.* at 23. Dr. Nimely noted that Plaintiff had experienced chronic issues with rhinitis and asthma as well as nasal obstruction and difficulty breathing. *Id.* Plaintiff reported congestion and sneezing as well as intermittent wheezing related to his asthma but did not show symptoms of epistaxis (nosebleed) or facial pain. *Id.* Plaintiff's Nasacort prescription was renewed. *Id.* at 18, 21.

On May 30, 2019, Plaintiff was seen in medical again for shortness of breath; he denied pain but was given a "neb treatment" as well as an albuterol inhaler. *Id.* at 26. On July 23, 2019, Plaintiff saw Dr. Nimely again. Plaintiff complained of nasal congestion that had persisted since his fracture. *Id.* at 37. Plaintiff's Nasacort was renewed and Dr. Nimely again made a note to follow up with the scheduler for the specialist consultation. *Id.* at 35, 38. During a chronic care visit on October 29, 2019, nurse Yvette Ledjo noted that Plaintiff no longer had any nasal deformity. *Id.* at 45.

On October 21, 2021, Plaintiff filed this lawsuit, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him proper medical care for his nose. ECF No. 1 at 3-4. In addition to money damages, he asks this Court to order that Defendants provide him immediate reconstructive surgery on his nose. *Id.* at 6. This decision deals solely with the propriety of Plaintiff's request for injunctive relief.

### III.   Preliminary Injunction

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd.*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary

3

restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at, 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

DPSCS contends that Plaintiff has received "regular and ongoing medical treatment and evaluations of his nose," asserting that his request is therefore moot. ECF No. 9 at 4. Moreover, DPSCS argues that none of the *Winter* factors weigh in Plaintiff's favor. *Id.* Plaintiff does not specifically address any of these factors in his Complaint. For the following reasons, Plaintiff has not met his burden of showing that preliminary relief is warranted.

Putting to the side whether Plaintiff is likely to succeed on the merits of his Eighth Amendment claim, none of the other *Winter* factors support his request. First, Plaintiff has not demonstrated that he will suffer irreparable harm absent injunction. Rather, the record reflects that Plaintiff is receiving care and he continues to convalesce. The medical records show, for example, that as of October 29, 2019, Plaintiff reported that "the pain has since subsided;" and the nurse noted that she observed no nasal deformity. ECF No. 1 at 3; ECF No. 9-1 at 46. Although Plaintiff alleges difficulty breathing, the record also reflects that he continues to improve and that

4

his condition is being treated medically.  Thus, the claimed harm is not "actual and imminent" or necessarily irreparable absent the requested surgery.  *See Direx Israel, Ltd.*, 952 F.2d at 812.

Nor has Plaintiff demonstrated that the balance of equities weighs in favor of granting Plaintiff injunctive relief or that such relief is in the public interest. In the prison context, preliminary injunctive relief in advance of a merits adjudication should be granted in only exceptional and compelling circumstances.  *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). This is so because, absent the most extraordinary situations, prisons must be given the discretion to implement daily operations and absent judicial interference.  *Id.* at 268 (citing *Inmates of Occoquan v. Barry*, 844 F.2d 828, 841 (D.C. Cir. 1988).  Plaintiff has not demonstrated that such extraordinary relief is necessary to an equitable outcome.  Further, to award injunctive relief here would most certainly upset the public interest in the orderly operation of the facility.  Because Plaintiff has failed to satisfy all four *Winter* factors, his request for injunctive relief shall be denied.

### IV.     Plaintiff's In Forma Pauperis Motion

Also pending is Plaintiff's Motion for Leave to Proceed in Forma Pauperis.  ECF No. 2. The affidavit in support of the motion fails to conform with the requirements of 28 U.S.C. § 1915(a)(2), the relevant portion of which provides that "[a] prisoner seeking to bring a civil action…without prepayment of fees or security therefore, in addition to filing the [requisite] affidavit…shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint…obtained from the appropriate official of each prison at which the prisoner is or was confined."  Thus, Plaintiff must obtain from each of the prisons where he was incarcerated over the past six months an inmate account information sheet showing the deposits to his account and monthly balances maintained therein.

5

To assist Plaintiff in providing this information to the Court, the Finance Officer at MCTC shall be directed to file a certificate which states (1) the average monthly balance in the account for the six-month period immediately preceding the filing of this Complaint and (2) the average monthly deposits to the account during that time.

A separate Order follows.

|  |  |
|---|---|
| \_\_\_\_\_3/25/22\_\_\_\_\_ | _____/S/_____ |
| Date | Paula Xinis |
|  | United States District Judge |